[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S APPLICATION AND MOTION FOR CONTEMPT (#205)
The defendant commenced this action by serving the plaintiff with an application to show cause why the plaintiff should not be held in contempt together with a summons to appear before the court on May 31, 1988. On that date, the parties appeared, and the matter was continued. On August 7, 1989, the defendant filed a motion for contempt predicated on the claims in her earlier application. On March 26, 1990, April 16, 1990, May 7, 1990 and June 4, 1990, this court heard evidence on the defendant's application and contempt motion. It should be noted that the delay between the service of the application and the hearing thereon was not caused by any action or inaction of the court.
The defendant's claims are as follows:
1. The plaintiff is delinquent in his alimony payments for the years 1982, 1983, 1985, 1986, 1987 and 1988. At trial both parties addressed the years 1984 and 1989, as well.;
2. The judgment contained certain provisions relating to the plaintiff husband's obligations to exercise stock options CT Page 1087 relating to T-Bar stock and relating to the extinguishment of defendant wife's property rights in T-Bar stock. The defendant alleges that the plaintiff improperly calculated and deducted from the proceeds of T-Bar stock sold on the defendant's behalf certain sums and thereby failed to comply with the provisions of the Decree of dissolution relating to the limits and termination of the defendant's stock interest in T-Bar and the payment to the defendant of the net proceeds thereof.;
3. Attorney's fees; (at trial, defendant reserved this issue for another hearing);
4. The plaintiff be held in contempt.
 I.
The Alimony Arrearage Claim
The Judgment of dissolution of the parties' marriage contained provisions concerning the payment of periodic alimony. It provided in part: "Until December 31, 1985, the alimony amount payable each month shall be the greater of $3,000.00 or 33% of the husband's monthly earned income. After December 31, 1985, the alimony amount payable each month shall be the lesser of $3,000.00, or 33% of the husband's monthly "earned income" or 15% of the husband's monthly "adjusted gross income." . . . For purposes of computing the alimony amount, the term "earned income" and "adjusted gross income" shall have the same meaning as they do under the Internal Revenue Code of 1954, as amended, provided that "adjusted gross income" shall not be reduced by alimony amounts paid to the wife. "
Three issues were debated by the parties in reference to the defendant's claim for alimony arrearages. They were:
1. Whether the payments made annually by the plaintiff were all alimony payments, particularly when the plaintiff reported his alimony payments to the Internal Revenue Service in a lesser amount than he now claims he paid as alimony to the defendant. As a corollary to this issue, the plaintiff claims a credit in subsequent years for overpayments in prior years.
For the years in question, 1982 — 1989, the court accepts the testimony of the plaintiff together with the other evidence offered by him that the payments made by him to the defendant, with minor exceptions, were made with the intention of furnishing support to the defendant and were made to fulfill the plaintiff's obligation to pay alimony. The defendant, by her silence all these years, has tacitly accepted the payments as a reduction of the plaintiff's obligation to pay alimony. CT Page 1088 Until recently, the defendant never complained or made any demands or filed any motions claiming any arrearages that are now claimed to be eight years old.
Nor can the defendant complain about the plaintiff reporting alimony payments to the Internal Revenue Service in amounts less than he paid to the defendant. The defendant reported as income the same amounts the plaintiff reported, and, therefore, the defendant has received tax benefits through the years. One can only speculate as to the plaintiff's reasons for reporting less alimony than he actually paid. The loss was his however and did not prejudice .he defendant.
The court declines to permit the plaintiff to take I credits for alleged overpayments against the alimony arrearages found by the court. The plaintiff has made no claim in the pleadings for repayments or credits, and for the first time during the trial he has made the claim that he was paying more alimony through the years than ordered. The court finds that any annual payments made in excess of the alimony order were gratuitous tax-free alimony payments. In prior years, the j plaintiff never took any affirmative action that would dispute the court's findings.
2. The second issue involving the alimony claim was whether the $248,906.25 which was the net gain on the exercise of T-Bar stock options which were shared with the defendant as required by Paragraph 1 (a, b, c) of the Judgment was intended to be computed with the other "earned income" of the plaintiff in determining the alimony obligation for the calendar year 1983.
The Judgment is silent as to whether or not this net gain should be excluded from the computation of the "earned income" of the plaintiff. Reading the Judgment as a whole, it is not unreasonable to conclude that it was not intended that the defendant would receive a double benefit by requiring the plaintiff to exercise her option for the sale of the defendant's one-half interest in the securities, and then having the amount of proceeds paid to the defendant included in the plaintiff's compensation. Therefore, the court finds that the Judgment intended that the defendant's share of the net gain received, $124,453.00, (1/2 of $248,906.00) not be included in the plaintiff's earned income for 1983 for alimony purposes and only the plaintiff's share, $124,453.00, be so included.
3. The third issue involved interpretation of the alimony formula for the years after December 31, 1985. The question presented was whether the alimony payments were to be the lesser I of the three definitions; $3,000.00 per month, or 33% of the CT Page 1089 plaintiff's monthly earned income, or 15% of the plaintiff's monthly adjusted gross income, or the lesser of $3,000.00 per month or the greater of 33% of earned income/15% of adjusted gross income.
The Judgment incorporated the exact language of the parties' separation agreement in reference to the alimony formula. The language of each state: "The alimony payable monthly is the lesser of $3,000.00, or 33% of the Husband's monthly earned income or 15% of the monthly adjusted gross income." As drafted, the 33% of the Husband's monthly earned income and 15% of his adjusted gross income constitute one compound complete phrase and not two separate and distinct ones.
To achieve the plaintiff's position that the choice is the lesser of the three definitions, the phrase would be required to have the following drafting:
. . . the lesser of $3,000.00; or 33% of the Husband's monthly earned income; or 15% of the Husband's adjusted gross income.
Further, reviewing the Judgment in its entirety, the court finds that both the Agreement and Decree indicate the desire to provide a stable stream of income to the defendant when the plaintiff's earnings of all nature and kind provided i him with the funds to do so. Therefore, the court concludes ! that the plaintiff's post 1985 alimony obligation is the lesser of $3,000.00 per month as compared with the greater of 33% of the plaintiff's monthly earned income or 15% of his monthly adjusted gross income.
Based on the decisions stated above, the court has , reached the following results on the yearly claims for alimony arrearages:
1. 1982 Balance Alimony due $37,407.00 33% of $113,355
Alimony paid 42,901.00 0.00
2. 1983
Alimony due $76,880.00
Earned income:
Salary $107,500.00 CT Page 1090 Group Term Life Ins. 517.50 Director's fee 500.00 1/2 net gain 124,453.00 ----------- $232,970.50
33% thereof $ 76,880.00
Alimony paid 41,400.00 $35,480.00
3. 1984
Alimony due $40,818.00
Earned income:
 Salary $122,999.96 Group Term Life Ins. 693.00 ----------- $123,692.96
33% thereof $ 40,818.00
Alimony paid 48,600.00 0.00
4. 1985 Balance
Alimony due $47,249.00
Earned income:
 Salary $139,040.00 Group Term Life Ins. 1,350.00 Auto 2,290.00 Other 500.00 ----------- $143,180.00
33% thereof $ 47,249.00
Alimony paid $51,351.00 0.00
5. 1986
 Alimony due $36,000.00 Alimony paid 18,000.00 $18,000.00
6. 1987
Alimony due $36,000.00 CT Page 1091 Alimony paid 35,000.00 $1,000.00
7. 1988
No claim made 0.00
8. 1989
Alimony due $15,997.00
 Adjusted gross income with alimony addback $106,646.00
15% thereof $ 15,997.00
 Alimony paid $6,200.00 $ 9,797.00 ---------- total balance $64,277.00
 II. The defendant's claim that plaintiff failed to comply with provisions of Decree in the amount of stock of T-Bar transferred to the defendant
The claim states that the plaintiff failed to comply with the Decree in two respects.
1. The plaintiff miscalculated appropriate credits and charges for state taxes which resulted in the under delivery of 1243 shares of T-Bar stock to the defendant in 1983. The stock was delivered in 1986, and the defendant claims interest on the value of the stock from the date the plaintiff was advised of his error until he delivered the securities.
The plaintiff conceded his mistake and belatedly made delivery. For reasons hereinafter stated, the court denies the defendant's request for interest.
2. The second part of the defendant's claim states that the defendant is due the value of 5,217 shares of T-Bar stock. The Judgment sets forth the elaborate procedure for the extinguishment of the property rights the defendant had in the T-Bar stock. (Judgment, Paragraph 1, sections (a) through (1)) Included in the procedure was the provision that from any distribution of stock to the defendant the plaintiff could withhold stock equivalent to the federal income taxes attributable to the shares transferred to the defendant. CT Page 1092
It is the defendant's claim, that the plaintiff used a zero base as his base of acquisition, for determining the credit in number of shares to be delivered as between himself and the defendant, (to be measured by diminishing the shares delivered to her) which resulted in a calculation of higher taxes due by the plaintiff (and under the judgment a lower number of shares delivered to the defendant) rather than the base which he used on his tax returns reporting the same sale. This resulted, after application of stock splits and dividends, with an overall loss to the defendant of 5,217 shares. The defendant claims an average price of $10.00 per share.
The court finds that the defendant has sustained her burden of proof on this claim. The court concludes that the plaintiff owes the defendant the sum of $52,170.00 as the value of the shares of stock that were not delivered.
 III.
Interest
The defendant has requested interest on the various sums due her. The awarding of interest lies within the discretion of the court. The determination whether to award interest is to be made in view of the demands of justice rather than by arbitrary rule. H.B. Toms Tree Surgery, Inc. v. Peter M. Brant, et al, 187 Conn. 343, 348 (1982).
In this case equity dictates that the defendant's requests for interest should be denied. The defendant's claims span a period of eight years. She could have pursued them earlier but chose not to. No evidence was presented indicating any demands were made upon the plaintiff for any alimony arrearages or for the plaintiff to transfer additional securities to the defendant prior to the filing of the instant motion.
The court finds that in 1983, the year involving substantial alimony arrearages, that the plaintiff's withholding of payments was based on his honest interpretation of the agreement and judgment that established the formula for alimony payments. In fact, the court has found that it agrees in part with the plaintiff's interpretation.
Finally, the plaintiff was very generous to the defendant in his payments to her following the dissolution of marriage. The plaintiff paid the defendant sums in excess of his alimony obligations in many years, and the defendant apparently had no complaints. CT Page 1093
The defendant's request for interest is denied.
The court finds that the plaintiff did not willfully disobey any orders of the court. Therefore, the court finds that the plaintiff is not in contempt.
However, the court finds that the plaintiff does owe the defendant alimony arrearages in the amount of $64,277.00 and the sum of $52,170.00 for the underdelivery of T-Bar stock. This results in a total due the defendant of $116,447.00.
Judgment may enter accordingly.
NOVACK, J.